United States District Court
District of Connecticut

| | |
|---|---|
| Confectionery Arts International, LLC ) | |
| ) | No. 3:17-cv-00108 (KAD) |
| Plaintiff ) | |
| ) | **ANSWER AND** |
| v. ) | **COUNTERCLAIMS** |
| ) | |
| Sunflower Sugar Art USA, Inc. ) | (Jury Trial Demanded) |
| ) | |
| Defendant ) | |

## DEFENDANT SUNFLOWER SUGAR ART USA, INC.'S
## AMENDED ANSWER AND COUNTERCLAIMS

In response to the Amended Complaint filed by Confectionery Arts International, LLC ("Plaintiff") on March 5, 2018, in the United States District Court for the District of Connecticut, Defendant Sunflower Sugar Art USA, Inc. ("Defendant") hereby answers as follows:

### NATURE OF THE ACTION

1. Paragraph 1 is a description of the legal claims brought by Plaintiff to which no response is required. To the extent that a response is required, Defendant denies.

2. Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 2.

### THE PARTIES

3. Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 3.

4. Defendant admits Paragraph 4.

5.      Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 5.

## JURISDICTION AND VENUE

6.      Defendant admits that this federal court has subject matter jurisdiction based on the federal claims asserted but is without sufficient information and/or knowledge to form a belief as to whether such jurisdiction exists as a matter of fact as asserted in paragraph 6.

7.      Paragraph 7 is a description of the legal action brought by Plaintiff to which no response is required.

8.      Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 8.

9.       Defendant admits that this federal court has supplemental jurisdiction based on the federal claims asserted but is without sufficient information and/or knowledge to form a belief as whether such jurisdiction exists as a matter of fact as assert in paragraph 9.

10.     Defendant denies that this Court has personal jurisdiction over Defendant. Defendant asserts that the Court should dismiss the action for lack of personal jurisdiction.

11.     Defendant denies paragraph 11.

12.     Defendant denies paragraph 12.

13.     Defendant denies paragraph 13.

14.     Defendant denies paragraph 14.

15.     Defendant denies paragraph 15.

16.     Defendant denies paragraph 16.

17.     Defendant denies paragraph 17.

18.     Defendant denies paragraph 18.

19.     Defendant denies paragraph 19.

20.     Defendant denies paragraph 20.

21.     Defendant denies that venue is proper. Defendant asserts that the Court should dismiss this action due to improper venue.

## THE DISCO DUST MARK

22.     To the extent that paragraph 22 alleges that DISCO DUST is a brand name, the defendant denies paragraph 22. As to the remainder of the allegations, Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 22.

23.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 23.

24.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 24.

25.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 25.

26.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 26.

## THE CONFECTIONERY ARTS INTERNATIONAL (STYLIZED) MARK

27.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 27.

28.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 28.

29.     Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 29.

30.     Defendant is without sufficient information and/or knowledge to form a belief as

to the truth of the matters asserted or inferred in Paragraph 30.

## SUNFLOWER'S [ALLEGED] WRONGFUL CONDUCT

31. Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 31.

32. Defendant denies paragraph 32.

33. Defendant denies paragraph 33.

34. Defendant denies paragraph 34.

35. Defendant denies paragraph 35.

36. Defendant denies paragraph 36.

37. Defendant denies paragraph 37.

38. Defendant denies paragraph 38.

39. Defendant denies paragraph 39.

40. Defendant denies maintaining a dummy corporation. As to the remainder of paragraph 40, Defendant is without sufficient information and/or knowledge to form a belief as to the truth of the matters asserted or inferred in Paragraph 40.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

41. Defendant's answers above are hereby incorporated by reference.

42-50. Defendant denies paragraphs 42-50.

## COUNT II: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

51. Defendant's answers above are hereby incorporated by reference.

52-57. Defendant denies paragraphs 52-57.

## COUNT III: COMMON LAW TRADEMARK INFRINGEMENT

58. Defendant's answers above are hereby incorporated by reference.

59-64. Defendant denies paragraphs 59-64.

### COUNT IV: COMMON LAW DILUTION OF A DISTINCTIVE MARK

65. Defendant's answers above are hereby incorporated by reference.

66-72. Defendant denies paragraphs 66-72.

### COUNT V: COMMON LAW UNFAIR COMPETITION AND MISAPPROPRIATION

73. Defendant's answers above are hereby incorporated by reference.

74-81. Defendant denies paragraphs 74-81.

### COUNT VI: UNFAIR COMPETITION AND TRADE PRACTICES UNDER THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

82. Defendant's answers above are hereby incorporated by reference.

83-86. Defendant denies paragraphs 83-86.

### COUNT VII: TORTIOUS INTERFERENCES WITH BUSINESS RELATIONS

87. Defendant's answers above are hereby incorporated by reference.

88-92. Defendant denies paragraphs 88-92..

### COUNT VIII: BUSINESS DISPARAGREMENT/TRADE LIBEL

93. Defendant's answers above are hereby incorporated by reference.

94-101. Defendant denies paragraphs 94-101.

### COUNT IX: USE OF A FICTITIOUS BUSINESS NAME AS AN UNFAIR TRADE PRACTICE IN VIOLATION OF CONN. GEN. STAT. §35-1(a)

102. Defendant's answers above are hereby incorporated by reference.

103-112. Defendant denies paragraphs 103-112.

## PRAYER

113.   Defendant denies that Plaintiff is entitled to the relief sought in the Prayer.

## JURY DEMAND

114.   Defendant also demands a jury for all issues triable by Jury.

## AFFIRMATIVE DEFENSES

1.   Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.   The complaint should be dismissed for lack or personal jurisdiction or the action should be transferred on the basis of improper venue.

3.   Defendants deny Plaintiff has sustained any damage, deny the nature and extent of damage (if any) and deny they caused Plaintiff to sustain any damage.

4.   The claims are barred in whole or in part by the applicable statutes of limitations.

5.   Plaintiff is infringing Defendant's trademarks under federal and common law.

6.   Plaintiff has no protectible interest in the mark "DISCO DUST."

7.   Plaintiff's claims are barred by the doctrine of unclean hands.

8.   Plaintiff's claims are barred by the doctrine of laches.

9.   Plaintiff's claims are barred by the doctrine of estoppel by acquiescence.

10.   Plaintiff's claims are barred by the doctrine of waiver.

11.   All marks are generic and not entitled to protection.

12.   Plaintiff's claims are barred because "DISCO DUST" is a generic or descriptive term for non-toxic glitter product that has not acquired a secondary meaning and is not entitled to protection.

13.   Plaintiff's registration of "DISCO DUST" is invalid because Sunflower Sugar Art USA, Inc. used the mark prior to the Plaintiff and as a result, Plaintiff cannot maintain a claim

based upon infringement of a federally registered mark.

14. Plaintff's claims are barred by Defendant's fair and good faith use of the descriptive mark to describe the Defendant's goods pursuant to 15 U.S.C. §1115(b)(4).

15. Plaintiff's registration of "DISCO DUST" is invalid because Plaintiff submitted false specimens of use or other information and omitted material facts when applying for the "DISCO DUST" registration.

## COUNTERCLAIMS

1. Defendant/Counterclaim Plaintiff, Sunflower Sugar Art USA, Inc. (herein referred to as "Defendant" or "Sunflower") brings the following counterclaim against Plaintiff/Counterclaim Defendant, Confectionery Arts International, LLC. (herein referred to as "CAI" or "Plaintiff").

## THE PARTIES

2. Defendant, Sunflower Sugar Art USA, Inc. is a Florida limited liability company with a principal place of business at 6001 Highway A1A, Indian River Shores, FL 32963.

3. Sunflower is a manufacturer and wholesale distributor of baking and candy making, cake decorating, and commercial baking supplies in addition to decorative non-toxic glitter for use in the baking and craft industries.

4. Plaintiff, Confectionery Arts International, LLC is a Connecticut limited liability company with a principal place of business at 332 Washington Avenue, New Britain, Connecticut 06051.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this counterclaim pursuant to 28

U.S.C. §1331 and §1338(a); and 15 U.S.C §1121 because this case is one involving the Lanham Act and Acts of Congress pertaining to trademarks and related actions; and pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act.

6. This Court has personal jurisdiction over CAI because it resides in Connecticut; transacts business in this state; owns, uses, and possesses real property in Connecticut.

7. In filing this lawsuit in the District of Connecticut, CAI has consented to personal jurisdiction.

8. The Defendant's objection to the venue notwithstanding, the District of Connecticut is a proper venue for this counterclaim pursuant to 28 U.S.C. § 1391(b)(1) and (2) because CAI is a Connecticut company, moreover, because a substantial part of the events giving rise to Sunflower's requested declaratory judgment occurred and are occurring in this district, namely, CAI's business activities within Connecticut. Sunflower's claims are compulsory counterclaims to those claims already brought by CAI in the District of Connecticut.

9. In filing this lawsuit in the District of Connecticut, CAI conceded and waived any objections to venue including improper venue and forum non-conveniens.

## **FACTS**

10. "DISCO DUST" is a non-toxic glitter product often used in the baking and craft industries for decorative purposes.

11. As evidenced in the marketplace, including but not limited to internet and e-commerce marketplaces, various businesses promote, market, display, demonstrate and sell decorative glitter products including without limitation those generically referred to as "DISCO DUST," "Disco Glitter," "Disco Colors," "Disco [*insert color*]" or some combination or variation thereof.

12. "DISCO DUST" has become the generic term commonly used by both sellers

and consumers for non-toxic glitter products including those in the baking industry.

13.  The phrase "DISCO DUST" originated as a slang expression for cocaine. *See* Tom Dalzell and Terry Victor, *The New Partridge Dictionary of Slang and Unconventional English* at 688 (2015) (quoting "[T]op DJs on the decks and lots of DISCO DUST in carefully situated little stashes" from Wayne Anthony, *Spanish Highs* at 106 (1999)).

14.  The phrase "DISCO DUST" was used as early as 1979 in the music industry when it was used in *Disco Inferno* by Porter Bibb., a trend which continued into 1997, when former *Faith No More* guitarist Jim Martin released his first solo album "Milk and Blood" which has as its first track the song "DISCO DUST."

16.  In 1989, Sunflower started selling a premium line of cake decorating and sugar art tools. Sunflower's products were, and continue to be, renowned for their superior quality including metal cutters, luster dusts, flower, petal and leaf veiners and other silicone molds.

17.  Sunflower's range of petal and luster dusts have a large variety as customers can purchase them in an abundance of color shades with disco, sparkle and pearl finishes and colors such as daffodil, french grey, ivory, peach, cocoa, african violet, tiger lily and many others. These products are sold under the marks: Luster Dust, Pearl Dust, Petal Dust, Sparkle Dust, Highlight Dust, and DISCO DUST.

18.  Sunflower began using the mark "DISCO DUST" in the baking and cake decorating industry no later than June 21-22, 1997, at the British Sugar Craft Guild trade show in Telford, England when Sunflower's founder, Pilar Gonzalez, made a presentation in which she used four original varieties of DISCO DUST: Disco Pink, Disco Green, Disco Blue and Disco Violet. These DISCO DUSTs were used on a decorative lace piece made of gum paste that would be removed from the cake before consumption. These DISCO DUSTs were sold at the show and, thereafter, stocked and sold regularly by Sunflower.

19. Upon information and belief, Sunflower was the first company to use the phrase "DISCO DUST" for cake, candy and similar decorations.

## COUNT ONE
### (Declaratory Judgment of Non-infringement)

20. The factual allegations in the foregoing paragraphs of this Counterclaim are incorporated herein by reference.

21. "DISCO DUST" is a descriptive and generic term commonly used for cake and candy decoration that describes a decoration of a certain size, reflectiveness and texture.

22. Today, many cookbooks refer to DISCO DUST generically as a type of cake or candy decoration. *See, e.g.*, *The Sweet Book of Candy Making* at 142 (2012).

23. According to Autumn Carpenter, *Decorate Cakes, Cupcakes, and Cookies with Kids: Techniques, Projects, and Party Plans for Teaching Kids , Teens, and Tots* at 17 (2013), "Disco dust, sometimes called fairy dust, provides the most sparkly effect: it is nontoxic but not yet FDA approved." The book provides this definition of DISCO DUST under "Sprinkles and Sugars."

24. According to Rosie Alyea, *Sweetapolita Bakebook: 75 Fanciful Cakes, Cookies & More to Make & Decorate* (2015), "DISCO DUST: This powdery, super-sparkly glitter is certainly the most dazzlingly of the sprinkle family. This is as twinkly as it gets, truly. It comes in almost any color or shade you can dream up and adds serious glamour."

25. According Ashley Fox Whipple, *Super Cute Crispy Treats: Nearly 100 Unbelievable No-Bake Desserts* at 165 (2015): "Disco dust: This very fine, nontoxic glitter adds lots of spark and shine to projects."

26. According to Mari Bolte, *Make It, Gift It: Handmade Gifts for Every Occasion* (2015) under the title "Other Decorating ideas": "Use DISCO DUST, a nontoxic glitter, instead of luster dust. Brush cake balls with a moistened paintbrush. Then dip your brush into DISCO

DUST and paint onto the cake balls. Once the DISCO DUST has dried completely, use a dry brush to remove any excess."

27. CAI's use of "DISCO DUST" does not seek to distinguish or add secondary meaning to the phrase, rather CAI takes advantage of the descriptive nature of the terms.

28. CAI has exhibited a pattern and practice with similar conduct in seeking to capitalize on the use of other generic and descriptive terms.

29. Plaintiff seeks declaratory judgment from this Court that use of the phrase "DISCO DUST" does not constitute trademark infringement because it is a generic mark or, in the alternative, a descriptive mark that has not obtained a secondary meaning that no one has legal rights to own.

## COUNT TWO
### Cancellation of the U.S. Registration No. 4089733 Pursuant to 15 U.S.C. §1119

30. The factual allegations in the foregoing paragraphs of this Counterclaim are incorporated herein by reference.

31. According to United States Patent and Trademark Office (U.S.P.T.O.) records, CAI applied for registration of "DISCO DUST" on or around October 10, 2010, Serial No. 85143509 (the "Application"), alleging dates of first use of "DISCO DUST" as a trademark on January 1, 1999 and in interstate commerce on May 1, 1999.

32. CAI applied for registration of "DISCO DUST" in connection with "decorative glitter" in international class [IC] 020 and "candy decorations for cakes, edible cake decorations, candy sprinkles" in IC 030, after amendments to the Application's original description of goods.

33. On January 12, 2011, the U.S.P.T.O. through office action correspondence refused to register "DISCO DUST" indicating that the mark "merely describes a characteristic of applicant's goods and/or services."

34. Attached to the U.S.P.T.O. office action of January 12, 2011 were five excerpted articles downloaded by the examining attorney indicating sales of "DISCO DUST" by other entities, A&H Cake Design and Global Sugar Art, and all of which reference "DISCO DUST **by Sunflower Sugar Art**."

35. In response to the examining attorney's finding, CAI indicated falsely that "the Examiner's excerpted articles downloaded from Google show use of the mark 'DISCO DUST' by two stores/entities, the first being 'Global Sugar Art' and the second being 'A&H Cake design', both of which are customers of the applicant, and both customers have applicant's permission to use the mark 'DISCO DUST.'"

36. CAI's principal, Mark Czerczak, later testified under oath that although both entities were customers of CAI, neither entity had permission to use the mark "DISCO DUST," and neither had permission to sell "DISCO DUST by Sunflower Sugar Art."

37. Sunflower Sugar Art refers to the Counterclaim-Plaintiff in this action and Counterclaim-Plaintiff had no agreement with CAI.

38. After the U.S.P.T.O. again found "DISCO DUST" to be descriptive and non-registrable, CAI amended its application from a "1(a) application," based upon use, to a "2(f) application," based upon the allegation that "DISCO DUST" had acquired distinctiveness, such that it was no longer descriptive.

39. On September 1, 2011, in support of its allegation of acquired distinctiveness and its amended application, CAI submitted specimens of use of "DISCO DUST" in an office action response to the U.S.P.T.O.

40. These specimens of use purportedly represented CAI's sales to customers and CAI verified the accuracy of these specimens, as required by the U.S.P.T.O.

41. In addition to the specimens, CAI responded to the U.S.P.T.O. by claiming that "The mark has become distinctive of the goods/services through the applicant's *substantially exclusive and continuous* use in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement." (emphasis added)

42. CAI's statement that it used DISCO DUST *"substantially exclusive[ly]"* is patently false, misleading, and constitutes fraud on the U.S.P.T.O.

43. At the time this statement was made, "DISCO DUST" was widely used to identify a product, and had no source connotation, and was certainly not exclusively attributed to one source – CAI or otherwise.

44. As a direct result of CAI's September 1, 2011 representations on acquired distinctiveness and its submission of these specimens of use, CAI overcame the U.S.P.T.O.'s objection to registration and obtained registered status for "DISCO DUST," Registration No. 4,089,733 for the products in IC 020 and IC 030.

45. As an experienced participant in the industry, and one dealing with this particular product, CAI knew that its statements of "exclusive" use of DISCO DUST were false and made such statements with a deliberate intent to deceive the U.S.P.T.O.

46. Prior to making application to the U.S.P.T.O., CAI was aware of competitors in the marketplace selling "DISCO DUST" and at the time that its application was filed, CAI was aware that other entities were selling products under the name "DISCO DUST" but did not disclose that information to the U.S.P.T.O. and such failure to disclose constitutes fraud on the U.S.P.T.O.

47. CAI knew of the generic use of "DISCO DUST" within the cake decorating and baking industry and did not seek to distinguish itself from its competitors or add secondary meaning to the phrase, either before or after its registration, but rather sought to gain market share

by excluding its competitors through registration of the generic term "DISCO DUST" and initiating a pattern and practice of alleging and prosecuting infringement against its competitors

48. Because CAI's registration of "DISCO DUST" was obtained through fraud on the U.S. Patent & Trademark Office, it should be ordered cancelled

49. Because "DISCO DUST" was, at the time of application for registration in relation to the cited goods, a generic term, it should be ordered cancelled.

50. Because CAI's registration of "DISCO DUST" is of a descriptive term without secondary meaning it should be ordered cancelled.

51. Because there exists a justifiable controversy between Sunflower and CAI concerning Sunflower's alleged violation of the Lanham Act in relation to U.S. Registration No. 4089733, and for the foregoing reasons (independently and collectively) Sunflower seeks cancellation of U.S. Registration No. 4089733.

### COUNT THREE (in the alternative to Counts One and Two)
### (Common Law Trademark Infringement)

52. The factual allegations in the foregoing paragraphs are incorporated herein by reference.

53. To the extent that the mark is determined to not be descriptive, or generic and/or determined to have acquired secondary meaning, Defendant's use of the mark is entitled to protection due to Defendant's prior use which provides the Defendant the rights to common law trademark protection.

54. Defendant was the first to use "DISCO DUST" in commerce for cake and candy decorations primarily in retail sales and increasing into e-commerce and internet sales through both her own website and third-party e-commerce retail websites which made Defendant's products available for sale and created a zone of goodwill with its customer

base throughout the United States.

55. Through Defendant's continuous use of the mark "DISCO DUST" and the high quality of Defendant's product, it has become both known and recognizable throughout the baking and cake decorating industry within the United States with a reputation as a quality cake decorating product.

56. Plaintiff's willful use of the mark "DISCO DUST," as admitted to in its Amended Complaint, is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Plaintiff's products are affiliated with, sponsored by, or endorsed by Defendant.

57. Plaintiff's conduct as admitted in its Amended Complaint constitutes infringement under common law, and has caused and will continue to cause, Defendant to incur damages and irreparable harm.

58. By reason of the foregoing, Plaintiff's trademark infringement and conduct entitle the Defendant to recover its damages and costs associated with this action, together with an accounting of profits made by the Plaintiff on its sales of "DISCO DUST."

**WHEREFORE**, Defendant prays that this Court enter judgment in its favor on its First Claim and enter a declaratory judgment that "DISCO DUST" is a generic or descriptive mark without a secondary meaning or, in the alternative, each and every other claim for relief set forth above and award it relief including, but not limited to:

A. A declaratory judgment from this Court that use of the phrase "DISCO DUST" does not constitute trademark infringement because it is a generic mark or, in the alternative, a descriptive mark that has not obtained a secondary meaning and that as a result no one has legal rights to own the mark "DISCO DUST"; and/or

B. An order cancelling U.S. Registration No. 4089733 due to the mark being generic and/or descriptive and lacking secondary meaning and/or CAI's fraud in obtaining registration through the application process with the U.S.P.T.O.; and/or

C. In the alternative, that Plaintiff be compelled to account to Defendant for any and all profits derived from its infringing acts complained of herein pursuant to 15 U.S.C. § 1117 or common law or both; and

D. An order that Plaintiff pay damages, including but not limited to Plaintiff's profits, and that those damages be trebled pursuant to 15 U.S.C. § 1117 or paid pursuant to common law or both; and

E. Plaintiff be ordered to pay Defendant's costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws including common law.

F. Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: November 13, 2018

Respectfully Submitted,
THE DEFENDANT,
SUNFLOWER SUGAR ART USA, INC.,
BY THEIR ATTORNEY,

/s/ Dean A. Hanafin
Dean A. Hanafin ct30130
Aeton Law Partners LLP
101 Centerpoint Drive, Suite 105
Middletown, CT 06457
T: (860) 724-2163
F: (860) 724-2161
dean@aetonlaw.com